In the Matter of SHEARSON, HAMMILL & Co. et al., Petitioners, *v.* STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, July 15, 1963.

246

*Milbank, Tweed, Hadley & McCloy* (*William E. Jackson, Howard O. Colgan, Jr.,* and *Andrew J. Connick* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* and *Paxton Blair* of counsel), for respondent.

HERLIHY, J.   This special proceeding was instituted pursuant to article 78 of the Civil Practice Act and section 199 of article 9 of the Tax Law and transferred to this court pursuant to section 1296 of the Civil Practice Act.

The petitioners seek a review of a determination of the Tax Commission which held that the total amount of interest, dividends, capital gains and losses from the securities in the individual accounts of the partners was properly includable in computing the gross income and net income of the partnership for the years 1952, 1953 and 1954 for unincorporated business tax purposes under article 16-A of the Tax Law.   This appeal will determine the correctness of both the unincorporated business tax levied on the partnership and the personal income tax levied on the nonresident general partner Winston.

The partnership — Shearson — is a limited partnership, being a security, stocks and bonds brokerage firm and a member of the New York Stock Exchange.   Winston is a general partner in the firm and resides in Illinois.

Rule 415 of the New York Stock Exchange (now rule 328) provided that members of the Exchange could not maintain an aggregate indebtedness greater than a certain percentage of its net capital (1500 per centum in 1952 and 2000 per centum after 1953). The rule further provided: " No securities and equities in partners' individual accounts will be included as partnership property in computing the Net Capital of a member firm unless the partnership articles of the firm or some supplemental agreement specifically provide for such inclusion.''

It appears that the partners in the firm had both *individual accounts* with the firm, which were subordinated by specific agreement to creditors' claims and thereby made part of net capital for purposes of rule 415, and they had *capital accounts* in the partnership.

Under the terms of the agreement, a partner could withdraw, sell or exchange any property in the *individual account* at any time. The partners could not withdraw securities from their *capital accounts* without the consent of the majority partners unless there was an immediate substitution therein of cash or securities having an equivalent value. It appears that these accounts were held in the individual partner's name. It further appears that the partners received interest payments from the partnership upon their capital accounts.

The interest, dividends or other income and losses from securities or cash held either in the capital account or individual account were expressly reserved to the individual partners as owners thereof by article V of the partnership agreement. The only reservation being as to the *capital accounts* in regard to which the partners had to maintain the market value of securities prior to the issuance of stock rights or in the event of a stock dividend, the stock dividend was to be retained in the account.

The securities in the *partners' accounts* were registered to the individual partners. All dividends and interest were paid directly to the individual partners or their nominees and the firm had no record of such payments. Individual partners paid all taxes, commissions and charges on sales of their securities even when the partnership acted as their broker in various transactions.

We thus find that the securities and cash donated by the general partners to the so-called capital and individual accounts were solely for the purpose of securing creditors.

The applicable sections of article 16-A of the Tax Law are as follows:

" § 386-a. Imposition of tax. A tax is hereby imposed upon the entire net income of any unincorporated business wholly

or partly carried on within this state during each taxable year * * * per centum of the entire net income within this state * * *,,

" § 386-c. Net income defined. The term ' net income ' means the gross income of the unincorporated business less the deductions allowed by this article."

§ 386-d. Gross income. The term ' gross income ' includes gains, profits and income derived by the unincorporated business of whatever kind and in whatever form paid, including gains, profits or income from dealing in real or personal property growing out of the ownership or use of or interest in such property, as compensation from services, or from interest, rents, dividends, securities, commissions, brokerage fees, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever connected with the carrying on of such unincorporated business * * *".

The State Tax Commission found that the securities deposited in the partners' individual accounts and capital accounts were assets of the partnership and the income therefrom taxable under article 16-A of the Tax Law.

The respondent in its brief contends that the use of such wording in section 386-d as " growing out ", " use ", " interest ", " source whatever connected [with the] carrying on " " compel a pragmatic construction and application to the facts and reasonable inferences to be drawn from the record ". This same reasoning was advanced in a previous case where the determination of the Tax Commission was annulled. (*Matter of Marx* v. *Bragalini,* 6 N Y 2d 322, 331.)

In *Matter of Voorhees* v. *Bates* (308 N. Y. 184, 188) the court said: " ' This court has said that " A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax." [Citations] '. (See, also, *Matter of Delpriore* v. *Ball,* 281 App. Div. 214, affd. 306 N. Y. 775.) "

The undisputed facts herein suggest that there is far more than a doubt as to the taxable character of the *income.*

It is indeed obvious that these securities were assets of the partnership as to *principal* but only to the extent that such principal was pledged or obligated to the protection of the creditors of the partnership. With this collateral exception, all ownership rights and incidents were fully reserved by the donor partners. It follows that the partnership had no true ownership interest in the principal of the securities, but merely had the

power to subject the securities to the claims of creditors either by using the securities as direct collateral in business transactions or by their use as general security for all creditors.

There was no partnership control over the income. The Tax Commission in its brief argues that since the securities are assets of the partnership, the income of such assets are taxable to it. It more accurately states the law, however, when it says: " [T]here is absolutely no requirement in Article 16-A that income must be retained by the entity in order for it to be taxable — retention is not the test at all, rather it is its production and not its distribution."

Section 386-d, as set forth above, clearly requires that the income be *derived* by the business or *from a source connected* with the carrying on of the business, or that the income grow out of the ownership of the securities or the use of the securities.

It appears that the income from the securities was not *derived* by the business, the business having nothing to do with the investment in such securities.

It further appears that the income did not grow out of the use of the securities since it comes directly from the entity which issued such securities.

Nor did the income grow out of the ownership of the securities because the partnership never had ownership of the *income aspect* of such securities, nor actual ownership of any kind.

There can be no doubt that the income is derived from a source connected with the *carrying on* of the business. There also, however, can be no doubt that such income was never income of the partnership since it was never paid to the partnership nor was the partnership ever entitled to such income by virtue of the agreements of the partners with the partnership and each other. It would appear that in the event of a creditor's action to secure its rights in those securities, the partnership would not even be a necessary party by virtue of the partnership agreement.

The facts herein represent a classic example of the pledging of principal for the protection of the public but the reservation of all other rights, including income, for the benefit of the pledgor.

It appears that all income received by this petitioner has been taxed by the State and that the income from the securities involved in this case was not income of the partnership.

In our opinion, it is not necessary to resort to Federal law. The Federal statutes have no unincorporated business tax such as New York (art. 16-A), even though the definition of " gross income " is similar in the Federal statute, but in any event, our determination is not contrary to Federal law which would not

impose liability such as has been determined herein. (*Matter of Marx* v. *Bragalini,* 6 N Y 2d 322, 331, 333, *supra.*)

The determination of the State Tax Commission should be annulled, with $50 costs.

BERGAN, P. J., COON, GIBSON and TAYLOR, JJ., concur.

Determination of the State Tax Commission annulled, with $50 costs.