■ In the Matter of FREIDAY & Co., Petitioner, v STATE TAX COMMISSION, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which held that petitioner was liable for additional unincorporated business taxes. This is a transferred CPLR article 78 proceeding wherein petitioner seeks annulment of a determination by the State Tax Commission that he owes an additional $5,225.84, plus interest in unincorporated business taxes for the year 1966. Prior to January, 1962, Vincent La Frence owned a membership seat on the New York Stock Exchange (NYSE) and was a general partner in a brokerage firm. In 1962, he became a general partner of the petitioner, Freiday & Company, which is a member firm of the NYSE. La Frence had not yet paid in full for his stock exchange seat, and, in a partnership agreement dated January, 1962, petitioner agreed to loan La Frence sufficient funds at 6% interest so that he could purchase complete ownership of the seat. The agreement prohibited La Frence from selling or

encumbering his seat except with the consent of all the other general partners, and La Frence agreed to pay the proceeds from a sale of the seat, if necessary, to satisfy the loan. La Frence agreed to contribute to the petitioner the "use" of his stock exchange seat. The agreement, however, expressly provided that the proceeds from a sale of the seat remained his individual property, and did not constitute an asset of petitioner except as required to satisfy petitioner's creditors according to the rules of the NYSE. Although petitioner agreed to pay all dues, assessments, fines and other charges on the seat as required by the NYSE, and agreed to pay to La Frence interest at the rate of 6% on the value of the seat, the agreement provided that petitioner had no interest in any increase nor any liability for any decrease in the seat's value. Moreover, any profit or loss from the sale of the seat inured solely to La Frence's benefit. Finally, the agreement expressly stated that, notwithstanding the purchase loan by petitioner, the seat remained the individual property of La Frence. La Frence sold his stock exchange seat on Febraury 28, 1966 and received all the proceeds from the sale. He realized a capital gain of $130,646 which he reported on his personal income tax returns. Petitioner did not report this gain on its returns. However, the Department of Taxation and Finance issued a statement of audit changes, dated March 30, 1970, which stated that the gain on the sale of La Frence's stock exchange seat constituted additional business income subject to the unincorporated business tax. The State Tax Commission rejected petitioner's application for a redetermination upon the ground that La Frence's stock exchange seat was petitioner's asset as a matter of law. Subdivision (a) of section 705 of the Tax Law defines unincorporated business gross income as income and gain of the business, of whatever kind and in whatever form paid, includible in gross income for Federal income tax purposes, "including income and gain from any property employed in the business". The State Tax Commission has taken the position that La Frence's seat was an asset of petitioner and that, therefore, the gain from its sale constituted gross income within the meaning of subdivision (a) of section 705 of the Tax Law. The commission points out that petitioner's assets were used to purchase the seat; that profits from use of the seat belonged to petitioner; that interest paid on the seat's value was at the same rate paid on other contributions made to petitioner by the other general partners; that petitioner paid dues, assessments, fines and other charges regarding the seat; that use of the seat was generally restricted to petitioner's business; and that La Frence could not sell or encumber his seat without the other general partners' consent. The commission furthers its argument by reasoning that although petitioner did not hold legal title to the seat and was not entitled to receive the proceeds from its sale, the 1966 sale amounted to an assignment of the proceeds from petitioner to La Frence. Thus, the seat was an asset of petitioner since, argues the commission, it was its "equitable owner". In our view, the determination of the State Tax Commission must be annulled. As this court recently explained in *Matter of Gaines v Tully* (66 AD2d 106, 107), there must "be substantial evidence to support the finding that it [the seat] is an asset of the partnership *(Matter of Shearson, Hamill & Co. v State Tax Comm. of State of N. Y.,* 19 AD2d 245, affd without opn 15 NY2d 608)." The partnership agreement unequivocally demonstrates that title to the seat, except for the limited restrictions imposed by the rules of the NYSE, remained the individual asset of La Frence, and explicitly provides that petitioner was not entitled to the proceeds from the sale of the seat. As in *Gaines (supra),* the seat was not an asset which petitioner could pledge as a part of its business and the

seat did not appear on petitioner's books or balance sheet. While the income generated from the use of the seat in petitioner's business was concededly subject to the unincorporated business tax, the fact that La Frence contributed the "use" of the seat to petitioner does not mean that the proceeds from its sale constitutes income from property employed in petitioner's business (Tax Law, § 705, subd [a]), where, as here, petitioner neither received nor was entitled to the capital gain *(Matter of Gaines v Tully, supra)*. Furthermore, the reservation of income from the use of the seat, the fact that only La Frence was entitled to receive or required to bear any profit or loss accruing from any increase or decrease in value of the seat, and the fact that petitioner paid all dues, fines and other charges on the seat were entirely consistent with the expressed intention to contribute only the "use" of the seat to petitioner. We also reject the State Tax Commission's suggestion that the contribution of the use of the seat amounted to a contribution to the capital of petitioner. "To rely upon the power of the Tax Commission to make factual determinations is no substitute for the primary role of finding a reasonable basis for invoking the fact-finding power" *(Matter of Gaines v Tully, supra,* p 108). We conclude that the facts and reasonable inferences therefrom compel the conclusion that La Frence's stock exchange seat was not petitioner's asset such that the gain from its sale was attributable to petitioner for purposes of the unincorporated business tax *(Matter of Gaines v Tully, supra)*. Petition granted, and determination annulled, with costs. Greenblott, Sweeney, and Staley, Jr., JJ., concur; Mahoney, P. J., concurs in a separate memorandum; Herlihy, J., dissents and votes to confirm in a memorandum.

Mahoney, P. J. (concurring). I am constrained to concur upon the authority of *Matter of Gaines v Tully* (66 AD2d 106), and, accordingly, conclude that the determination should be annulled.

Herlihy, J. (dissenting). Unlike *Matter of Gaines v Tully* (66 AD2d 106), the present record contains substantial evidence to support the finding that the seat is an asset of the partnership. In *Gaines* the partner-owner at all times retained the absolute title to the seat with only a right to third parties to look to it as security. If there were any doubt as to this asset being an asset of the partnership and subject to its control, the following contract language establishes the practical proprietorship of the partnership: "Messrs. * * * La Frence each agree that he shall not transfer, sell, encumber, hypothecate or otherwise dispose of any such membership, or any part thereof so long as he is a partner, except with the written consent of all the other then partners of the partnership." In addition to the foregoing restriction on the title to the asset, the articles of partnership of January 26, 1962, which were continued as amended by the agreement of June, 1965, provided that in the event of any sale of the asset, the proceeds would be paid to the partnership to the extent necessary to pay the loan which financed the purchase of the asset. In this case there is a reasonable basis for the finding of the respondent that the gain from the sale of the asset is partnership income. The determination should be confirmed.