In the Matter of BERNARD WEINFLASH et al., Petitioners, v
JAMES H. TULLY, JR., et al., Constituting the New
York State Tax Commission, Respondents.

Third Department, May 5, 1983

**APPEARANCES OF COUNSEL**

*Stein, Simpson & Rosen* (*Marc Joseph* of counsel; *Michael F. Youdovin* on the brief), for petitioners.

*Robert Abrams, Attorney-General (Lawrence J. Logan* and *William J. Kogan* of counsel), for respondents.

OPINION OF THE COURT

CASEY, J.

Prior to 1967, petitioner Bernard Weinflash, who resided in New Jersey with his wife, also a petitioner, earned his living as a commission salesman of securities. In that year petitioner was designated a general partner of Charles Plohn & Co. (Plohn), a New York stock brokerage firm, and was approved as an allied member of the New York Stock Exchange. Petitioner's agreement with Plohn provided that he was to receive 1% of the partnership's profits and 45% of the commissions earned by Plohn as the result of the security transactions he consummated. During his association with Plohn, petitioner maintained a securities account in his own name. Additionally, petitioner received a salary of $12,000 per year and a draw of $12,000 per year. Petitioner was not required to share in Plohn's losses or to make any capital contribution to the firm.

For the years 1967, 1968, 1969 and 1970, petitioner filed nonresident New York State income tax returns according to the percentage of his commissions earned from business generated in New York. On September 15, 1971, petitioner filed claims for refunds of personal income tax for 1967, 1968 and 1969. On June 5, 1972, the Income Tax Bureau issued statements of audit changes and imposed additional taxes plus interest against petitioner for 1968, 1969 and 1970. The additional tax imposed was based on a recomputation of petitioner's allocation of income to New York according to the partnership allocation percentage.

Petitioner's contentions in this proceeding are twofold. First, he maintains that he suffered a net operating loss in 1970, entitling him to carry the deduction back to 1967 and then to 1968 and 1969. Second, petitioner contends he was not a partner of Plohn and, therefore, was not bound by the partnership allocation percentage.

By decision dated June 5, 1981, the State Tax Commission granted the petition insofar as canceling the deficiency as it pertained to 1968 on the ground that the notice was barred by the applicable Statute of Limitations and

allowing a deduction of $500 for 1970 for a loss sustained in the production of a play. Otherwise, the notice of deficiency and disallowance was sustained.

■ The State Tax Commission determined, upon what we find is substantial evidence, that petitioner failed to demonstrate that he sustained a New York net operating loss in 1970. Under section 632 (subd [b], par [3]) of the Tax Law, net operating losses are required to be determined in the same manner as the corresponding Federal deduction. Section 172 of the Internal Revenue Code (US Code, tit 26) "does not provide for an additional deduction of an item of expense not already allowed by the Code" (5 Mertens, Law of Federal Income Taxation, § 29.01, p 2) but, instead provides for a carry-back and a carry-over of certain deductions to other taxable years where such deductions exceed gross income for a particular year (US Code, tit 26, § 172, subd [c]). Only deductions attributable to a taxpayer's trade or business may be carried back to offset business income (US Code, tit 26, § 172, subd [d], par [4]). Petitioner maintains that he sustained a net operating loss for the year 1970 based on either a business loss as allowed by section 165 of the Internal Revenue Code or a business bad debt loss allowed by section 166 of the code (US Code, tit 26). The validity of the refund claim by petitioner is claimed to stem from the fact that Plohn's capital fell below the minimum amount required by applicable securities laws, rules and regulations, and Plohn was forced to liquidate. To protect its customers, Plohn transferred its accounts, including petitioner's personal account, to Axelrod & Co., another brokerage firm. On May 11, 1970, the New York Stock Exchange issued a directive prohibiting any withdrawals of capital from Plohn, and it requested that Axelrod transfer petitioner's account back to Plohn. Petitioner advised Axelrod not to retransfer his account, which prompted the exchange to warn him that such action would subject him to disciplinary measures and penalties. Thereupon, petitioner advised Axelrod to proceed with the transfer and now claims that his account was liquidated to satisfy Plohn's creditors at a loss to him of $177,000. Petitioner contends that he was motivated to permit the liquidation of his security account only in order to retain

his position as an allied member of the New York Stock Exchange and thereby continue his business as a stockbroker; and so, he concludes, any loss was a business loss, deductible under section 165 or, alternatively, a business bad debt loss deductible under section 166 of the Internal Revenue Code (US Code, tit 26), which qualified for the carry-back and carry-over allowed by section 172 of the Internal Revenue Code (see *United States v Generes,* 405 US 93, reh den 405 US 1033).

The Tax Commission, however, determined that inasmuch as there was no showing of an agreement subordinating petitioner's individual account to the partnership's creditors, as is usual to enable firms to meet the net capital requirements of the New York Stock Exchange (see *Matter of Shearson, Hammill & Co. v State Tax Comm. of State of N. Y.,* 19 AD2d 245, affd 15 NY2d 608), nor evidence of a closed and completed business loss transaction during the taxable year, as required by section 165 of the Internal Revenue Code, nor a demonstration that the debt became worthless within the taxable year, as required by section 166 of the Code, petitioner failed in his burden of proof. Furthermore, as the Tax Commission noted, Plohn's reconciliation of partners' capital accounts for 1971 showed petitioner having a credit balance, and a schedule attached to Plohn's 1970 partnership return showed petitioner receiving disbursements. A letter from Plohn's receiver, dated January 23, 1974, stating "to the best of our knowledge" petitioner's capital account was involuntarily liquidated is inconclusive. Nor is petitioner's contention that the counsel for the Income Tax Bureau stipulated to the extent of the loss substantiated. Contrary to his claim, he did not substantiate the cost basis of the securities to permit a determination of the alleged loss (US Code, tit 26, § 165, subd [b]; § 1011). Nor was he denied a fair hearing by the Tax Bureau's failure to submit a brief admitting the extent of the loss. The adjusted statements issued by the Internal Revenue Service for the years 1967 and 1968 are likewise inconclusive to show the existence of a 1970 net operating loss and petitioner failed to produce his Federal returns or final agent's reports to show the basis of the adjustments. For these reasons, the Tax Commission's

determination that petitioner failed in his burden of proof is supported by substantial evidence.

■ In regard to the allocation of petitioner's income to New York sources, as provided in section 637 (subd [a], par [1]) of the Tax Law, petitioner, as a nonresident partner, was required to include in his New York adjusted gross income that portion of his distributive share of partnership income which is attributable to partnership business in New York (*Matter of Jablin v State Tax Comm.*, 65 AD2d 891, 892). Petitioner's claim that he was not in fact a partner of Plohn, since he had only a 1% interest in the profits of the firm, received salary and commission, was not required to share in partnership losses, and did not participate in the management of that firm and that his partnership designation served only to enhance his prestige and aid his sales is unpersuasive (see *Matter of Jablin v State Tax Comm., supra,* p 892). Since petitioner chose to be designated a partner, he must accept the tax consequences of this decision (see *Matter of Faulkner, Dawkins & Sullivan v State Tax Comm.*, 63 AD2d 764). Section 637 (subd [b], par [1]) of the Tax Law requires that "[i]n determining the sources of a nonresident partner's income, no effect shall be given to a provision in the partnership agreement which — (1) characterizes payments to the partner as being for services". Accordingly, the determination of the Tax Commission should be confirmed.

The determination should be confirmed, and the petition dismissed.

MAHONEY, P. J., SWEENEY, KANE and WEISS, JJ., concur.

Determination confirmed, and petition dismissed, without costs.