In the Matter of SIDNEY ROSENTHAL, Deceased, et al., Petitioners, v NEW YORK STATE TAX COMMISSION, Respondent.

Third Department, June 21, 1984

APPEARANCES OF COUNSEL

*Murray M. Weinstein* for petitioners.

*Robert Abrams, Attorney-General* (*Diane DeFurio Foody* and *William J. Kogan* of counsel), for respondent.

OPINION OF THE COURT

LEVINE, J.

Petitioners Sidney Rosenthal, deceased, and his wife were residents of the State of Florida during the period in question. On November 1, 1967, Rosenthal became a limited partner in the New York City brokerage firm of Emanuel, Deetjen & Company (Emanuel, Deetjen) with a capital investment of $100,000. At the same time, he and Emanuel, Deetjen entered into an "agreement subordinating account" under which petitioner loaned the firm $250,000 in securities for purposes of complying with rule 325 of the New York Stock Exchange. That rule limits the extension of credit to margin account customers by member firms to 2,000% of a firm's net capital. However, the rule permits inclusion as part of such net capital of the value of securities loaned to a firm by a partner if it is subordinated to the claims of creditors. A firm is thereby enabled to expand the volume of its margin transactions. Under Rosenthal's partnership and subordinated loan agreements, he was to receive interest of 6% annually on his capital contribution and 7% annually on the "loan value" of his securities, which value was originally limited to $200,000. He received these payments in monthly installments of $500 and $1,166.66, respectively. In May, 1969, at the request of the managing partner of the firm, he increased the "loan value" of his securities subject to the subordinated loan agreement by $100,000, thus entitling him to an additional $7,000 in annual interest on that account. Rosenthal retained all of the incidents of ownership of the loaned securities, including the right to all forms of income derived therefrom.

In February, 1970, Rosenthal gave notice to Emanuel, Deetjen that he was withdrawing as a limited partner effective August 31, 1970, and that he was terminating his

participation in the subordinated loan agreement as of April 16, 1970. In May of that year, Rosenthal wrote to Emanuel, Deetjen pointing out that he was not entitled to the full amount of interest on his subordinated loan for April because of his withdrawal, and he also reminded them that additional sums were due him because the firm had not made payments to reflect the May, 1969 addition to his subordinated loan account.

In 1973, the Department of Taxation and Finance's audit division served petitioners with a notice of deficiency assessment for the years 1968 through 1970 to reflect purported New York State partnership income distributed to Rosenthal by Emanuel, Deetjen during those years. Initially, the audit division resolved this deficiency in a 1975 statement of audit changes which determined that petitioners owed tax, interest and penalties totaling $740.65 for 1970. Petitioners paid that amount in full. However, following a Federal audit of petitioners' 1970 return, the audit division recalculated petitioners' liability and determined that an amount was due for 1969 and an additional amount was due for 1970. The instant CPLR article 78 proceeding was commenced to review respondent's determination upholding that revised assessment.

Petitioners challenge the determination in three respects. Of these, the most easily disposed of is their contention that the 1980 determination that an additional amount was due for the year 1970 did not incorporate $3,764.74 allowed as additional deductions under the audit division's 1975 statement of audit changes and that there is nothing in the record to support respondent's conclusion that this sum was accounted for in the 1980 recalculation. However, the 1980 final computation allowed petitioners' deductions totaling some $12,000 more than they were allowed under the 1975 audit. Apart from this fact, the record is totally inconclusive as to whether the specific additional deductions allowed in 1975 were taken into account when petitioners were reaudited in 1980. Therefore, petitioners have clearly not sustained their burden of establishing that the 1980 assessment was erroneous in this respect (Tax Law, § 689, subd [e]).

■ We find, however, that there is more substance to the remaining two issues petitioners have raised by their challenge. First, under the 1975 audit, petitioners were allowed a deduction of $17,875 as Rosenthal's share of the 1970 losses of Emanuel, Deetjen. Under the 1980 recalculation upheld by respondent, that loss was converted to a taxable profit of $1,081. This adverse adjustment of more than $18,000 in taxable income was solely justified on the basis of the results of the Federal tax audit. The Federal audit, however, did not determine that petitioner received a share of partnership *profits* in 1970. Emanuel, Deetjen's financial statements for 1970 establish an over-all loss of more than $600,000, of which Rosenthal's share was over $38,000. The Federal audit report, which was introduced in evidence, clearly shows that the only adjustment regarding Rosenthal's gains or losses from Emanuel, Deetjen in 1970 was to reduce his *loss* by $1,081. Because Rosenthal had partnership income from other sources in excess of his Emanuel, Deetjen losses, the net Federal audit adjustment was to increase his aggregate net partnership income by the amount of the reduction of his allowable share in the Emanuel, Deetjen losses. Respondent interpreted this change set forth in the Federal audit report as a determination that Rosenthal had received a $1,081 gain from Emanuel, Deetjen, rather than merely a reduced loss. If respondent's interpretation of the result of the Federal audit were correct, however, the Federal adjustment would have been to increase Rosenthal's Federal taxable income by more than $39,000 (i.e., converting a $38,000 loss to a $1,081 profit, rather than merely reducing the loss). There being neither a rational basis nor support in the record for this assessment of additional tax (which is justified solely on the basis of the Federal audit), the determination must be annulled.

■ The final issue concerns respondent's inclusion of all payments made to Rosenthal by Emanuel, Deetjen in 1969 and 1970 of interest on his capital contributions and on his subordinated loans. Respondent ruled that as a nonresident, Rosenthal could not be taxed in New York on the interest he received for the subordinated loan of his personal securities, but could be so taxed on the interest he

received on his capital investment in the partnership. Nevertheless, although undeniably Rosenthal received interest on his subordinated loan in 1969 and 1970, respondent ruled that all interest payments received by him during those years were taxable because petitioners had not met their burden of showing the portion thereof which was not taxable. While we agree with the ruling that the interest Rosenthal received on his capital contribution was subject to New York tax (Tax Law, § 632, subd [b], par [2]), we disagree with respondent's conclusion that the record does not support an appropriate allocation for taxation purposes among the various sources of funds that Rosenthal received from Emanuel, Deetjen. The partnership and subordinated loan agreements established unmistakably that Rosenthal was entitled *only* to the following sources of funds from Emanuel, Deetjen: (1) a fractional share of the firm's profits; (2) interest at the rate of 6% on his capital contribution of $100,000; (3) interest of 7% on the value of his loaned securities up to a maximum "loan value" of $200,000 before June 1, 1969 and $300,000 thereafter; and (4) any income collected by Emanuel, Deetjen by way of dividends and interest derived from Rosenthal's loaned, personally owned securities. Of these sources of income, respondent ruled that interest on the subordinated loan account was not subject to a New York tax and, by case law, income directly derived from the loan securities themselves is similarly nontaxable in New York for a nonresident (*Matter of Shearson, Hammill & Co. v State Tax Comm.*, 19 AD2d 245, affd 15 NY2d 608 [construing section 386-d and subdivision 3 of section 359 of the Tax Law]). Therefore, the only payments made by Emanuel, Deetjen to Rosenthal in 1969 and 1970 that were taxable were his distributions of partnership profits, if any, and interest received on his capital contribution.

The financial reports of Emanuel, Deetjen for 1969 and 1970 were received in evidence and were not contradicted. Also, the audit division's reports on Emanuel, Deetjen for those years were made part of the record. These reports establish that in 1969, Rosenthal received the sum of $14,000 as his taxable share of partnership income and the sum of $18,833 from all other sources of payments by the

firm. Of the latter amount, the partnership agreement and other uncontradicted documentary evidence further establish that the maximum Rosenthal could have received by way of taxable interest on his capital contribution was $6,000 annually, paid at the rate of $500 a month. It thus appears clear that, at most, $20,000 of Emanuel, Deetjen's payments to Rosenthal were taxable in New York in 1969.

In 1970, again according to Emanuel, Deetjen's financial statements and the audit division's audit of that firm, the partnership had no profits and there was no taxable distribution of a proportionate share thereof to Rosenthal. These records also establish that Rosenthal received a total of $22,000 from Emanuel, Deetjen that year, during which he withdrew from the partnership effective August 31, and a final settlement of his subordinated loan account from the firm's successor in September. Of these sums, uncontradicted documentary evidence again establishes that Rosenthal received taxable interest on his capital contribution at the rate of $500 per month through April 30, 1970 and nontaxable interest on his subordinated loan account at the rate of $1,166.66 for the first three months of that year. He returned the check for the fourth monthly payment of such interest in May with a letter demanding that he be paid additional amounts to reflect the increase in the "loan value" of his subordinated loan account to $300,000 about a year earlier. Analysis of the partnership's financial statements for 1970 and succeeding years further shows that the four previously described interest payments on his capital contribution were the *only* payments of such interest in 1970. That year, Emanuel, Deetjen's reports show an *accrual* of $2,000 of interest on Rosenthal's capital account for the remainder of the term of his membership in the firm. This was not paid to Rosenthal, however, but was instead credited to his capital account. Rosenthal never received payment for the value of his capital account with that accrued interest, adjusted for the firm's losses and other additions not material to the instant case, until he sued for and recovered it in a subsequent action in the Federal courts (see *Rosenthal v Emanuel, Deetjen & Co.,* 516 F2d 325). The amount of the judgment awarded him in that action conforms to the value of his capital account set

forth in the firm's financial statements reflecting that the interest was accrued but not paid to him. Thus, the record is absolutely clear that, in 1970, Rosenthal (1) did not receive any taxable distribution of profits from Emanuel, Deetjen and (2) received only $2,000 in interest on his capital contribution. Since these were the only sources of payments from Emanuel, Deetjen which were subject to New York tax, all remaining payments were tax exempt.

Respondent's conclusion that no such allocation could be made between income which was taxable and that which was exempt was based essentially on the fact that there were credits and debits to the cash balance of Rosenthal's subordinated loan account and that the account never specifically set forth the amount of interest on the loan that was earned or received. These facts do not alter the result here. Rosenthal always maintained securities in the subordinated loan account having a value in excess of the "loan value", thus entitling him to the maximum interest under the loan agreement. As previously demonstrated, the interest payable on Rosenthal's capital contribution was completely accounted for. Respondent overlooked the fact that income from the loaned securities themselves was credited to the subordinated loan account and that other additions were made to that account to reflect additional interest due Rosenthal by reason of the increase in the "loan value" of his account in May, 1969, which interest was not paid until 1970. Both forms of income were not subject to New York tax and together they explain the variations in the cash balance of the subordinated loan account, which apparently gave rise to respondent's confusion.

For the foregoing reasons, the determination must be annulled and the matter remitted to respondent for further proceedings not inconsistent herewith.

MAHONEY, P. J., KANE, CASEY and WEISS, JJ., concur.

Determination annulled, with costs, and matter remitted to respondent State Tax Commission for further proceedings not inconsistent herewith.